NORTH CAROLINA

JOHNSTON COUNTY

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21CVS_____

CURTIS LEACH,

2021 NOV 18 P 2: 46

Plaintiff,

JOHNSTON CO., C.S.C.

V.

BY_____

TD BANK, N.A.; USAA FEDERAL
SAVINGS BANK; BRIDGECREST CREDIT
COMPANY; HUNTER WARFIELD INC;
STALLING MILLS APARTMENTS; LINCOLN
PROPERTY GROUP DBA THE LANDING AT
VINNIN SQUARE; FAIR COLLECTIONS &
OUTSOURCING OF NEW ENGLAND INC.;
ASHLEY HOMESTORES, LTD; ASHLEY
HOMESTORE HOLDINGS, INC.; SYNCHRONY
BANK; LEAD BANK; OKINUS INC.; RAC
ACCEPTANCE EAST, LLC DBA ACCEPTANCE
NOW; RENT-A-CENTER DBA AMICA LEASING
SANTANDER CONSUMER USA; CAPITAL AUTO
FINANCE INC.; CAPTIAL ONE; MATTHEW
MOTORS CLAYTON; LEITH CHRYSLER
PLYMOUTH JEEP/EAGLE, INC;

| **COMPLAINT, PREMLINARY INJUNCTION, JURY DEMAND, & NOTICE OF ELECTRONICALLY STORED INFORMATION "ESI"** |
|---|

Defendants,

TO THE HONORABLE COURT:

Now Comes Curtis Leach "Plaintiff" therein pursuant to the Federal Rules of Civil Procedure, North Carolina Rules of Civil Procedure, Johnston County Court Rules, relevant law, and case law as he files his pleading in the above entitled case against the Defendant(s). The Plaintiff is entitled to present this pleading and obtain relief due to the following:

## STATEMENTS OF FACT

1. Plaintiff currently resides within Johnston County;

2. Johnston County Superior Court has jurisdiction to preside over this case in accordance with Subchapter V, Article 20, § 7A-243;

3. The Defendants within this suit are either creditors, debt collectors, credit furnishers to credit bureaus that transacts business in North Carolina directly or by way of interstate commerce;

## COUNT I: VIOLATIONS OF THE NORTH
## CAROLINA UNFAIR & DECEPTIVE TRADE PRACTICE ACTS

4. The North Carolina Unfair and Deceptive Trade Practices Act is one of the most powerful laws in North Carolina. As its name indicates, the North Carolina Unfair and Deceptive Trade Practices Act (or "UDTPA," for short) prohibits businesses from engaging in unfair or deceptive acts or practices. Violating the UDTPA subjects a defendant to potential treble (triple) damages, costs, and attorney's fees;

5. In addition, the purpose of the of the UDTPA "[T]o declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

6. The Act carries a four-year statute of limitations;

7. The UDTPA is a statute of broad application and is enforceable by anyone engaged in "commerce" within North Carolina. That is, you if someone violates it in a transaction with you, you can sue them. The principal prohibition in the UDTPA is concise but powerful, stating "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." G.S. § 75-1.1.

8. "Unfair" is the operative word. Courts use various standards to determine whether an act or practice is unfair, including if the act either (1) violates industry standards, (2) violates established public policy, (3) is immoral, unethical, or unscrupulous, (4) substantially injures consumers, (5) is an inequitable assertion of the party's power or position, or (6) has the tendency to deceive.

9. As the Court can see, the range of conduct it covers is wide, and its interpretation is somewhat subjective, leaving judges and juries wide latitude to determine what is or is not unfair. With that said, the following named Defendants have violated the UDTPA by engaging in the following:

### TD BANK, N.A.

10. TD Bank does business with the Plaintiff by way of having financial accounts with the company. These financial accounts are current and open, however, TD Bank will not allow the Plaintiff to have a bank card to use the accounts even though the accounts are within good standing and the Plaintiff is entitled to a bank card. The Plaintiff cannot withdraw money from his accounts, make purchases, or request a replacement card even though the accounts are current and open. The reasons that the TD Bank illegally denies the Plaintiff access to his accounts is because "inactivity" or "by review the Plaintiff should not have access" while supplying inaccuracies on his credit report that are false. This behavior is unethical, deceitful, and injuries the Plaintiff greatly

## USAA FEDERAL SAVINGS BANK

11. USAA Federal Saving Bank claims to have a "debt" within alleged accounts ▮4355X & ▮7082XX that the Plaintiff needs to pay, however, no money is owed. They also supply inaccuracies on his credit report that are false. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## BRIDGECREST CREDIT COMPANY

12. Bridgecrest Credit Company supply inaccuracies on the Plaintiff's credit report that are false by entering late payments when the payments or not 30 days late or greater. They also do not abide by their own grace period for later payments. They have also charged late fees when they should not have since the Plaintiff was never late on his payments. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## HUNTER WARFIELD

13. Hunter Warfield claims to have a "debt" that they are managing from Stalling Mills Apartments within alleged account ▮3543X. There is absolutely no paperwork or contract that will prove that these two (2) parties can justify why there is money owed. The Plaintiff paid all his financial obligations. They also supply while supplying inaccuracies on his credit report that are false. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## STALLING MILLS APARTMENTS;

14. On or about July 2020, Hunter Warfield claims to have a "debt" of $342.00 that they are managing from Lincoln Financial Group DBA Stalling Mills Apartments regarding account xxxxx5431. There is absolutely no paperwork or contract that will prove that these two (2) parties can justify why there is money owed. The Plaintiff paid all of his financial obligations. They also claim that there is an existing debt while supplying inaccuracies on his Equifax credit report that are false by claiming that the account type is a collection account. The Plaintiff finds this very disturbing as account xxxxx5431 is not reflected with Stalling Mills business relationship with the Plaintiff before July 2020 as the Plaintiff rented from Stallings Mill and there was not one entry into his credit report that reflected any rental payment history. The Plaintiff is very interested in seeing what this absurd and petty $342.00 is being allocated towards. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## LINCOLN PROPERTY GROUP DBA THE LANDING AT VINNIN SQUARE

15. Fair Collections & Outsourcing claims to have a "debt" that they are managing from Lincoln Property Group DBA The Landing At Vinnin Square within alleged account ▮9106X. There is absolutely no paperwork or contract that will prove that this party can justify why there is money owed. The Plaintiff paid all his financial obligations. They

also supply inaccuracies on his credit report that are false. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## FAIR COLLECTIONS & OUTSOURCING OF NEW ENGLAND INC.

16. Fair Collections & Outsourcing claims to have a "debt" that they are managing from Lincoln Property Group DBA The Landing At Vinnin Square within alleged account ▇9106X. There is absolutely no paperwork or contract that will prove that this party can justify why there is money owed. The Plaintiff paid all his financial obligations. They also supply inaccuracies on his credit report that are false. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## ASHLEY HOMESTORES, LTD; ASHLEY HOMESTORE HOLDINGS, INC.

17. Ashley Homestores, Ltd & Ashley Homestore Holdings claims to have a "debt" within alleged account ▇1919XXXXXXXXXX that the Plaintiff needs to pay, however, no money is owed. They also supply inaccuracies on his credit report that are false. They are being consistent with their credit as they skip reporting the alleged account and then they resume reporting whenever they get around to it. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## SYNCHRONY BANK

18. Synchrony Bank claims to have a "debt" within alleged account ▇1919XXXXXXXXXX that the Plaintiff needs to pay, however, no money is owed. They also supply inaccuracies on his credit report that are false. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## LEAD BANK

19. Lead Bank claims to have a "debt" that the Plaintiff needs to pay within alleged account ▇8288XXX, however, no money is owed according to their own credit reporting. They also supply inaccuracies on his credit report that are false such as not reporting on the credit report for over a year and even submitting N/A on one of the months that they reporting which is not a proper entry. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## OKINUS INC.

20. Okinus Inc. claims to have a "debt" within alleged account ▇5645X that the Plaintiff needs to pay, however, no money is owed by the Plaintiff. They also supply inaccuracies on his credit report that are false and stopped on his credit last year which shows that he does not owe anything and that they are illegally withholding their monthly entries when they should not be. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## RAC ACCEPTANCE EAST, LLC DBA ACCEPTANCE NOW

21. RAC Acceptance East, LLC DBA Acceptance Now claims to have a "debt" that the Plaintiff needs to pay within alleged account ██0785XXXXXXXXXXXX, however, no money is owed because the Plaintiff settled this debt in March 2019. RAC has not honored their settlement agreement with the Plaintiff and they are, to this day, contacting the Plaintiff to have him pay the debt again. They also supply inaccuracies on his credit report that are false as if they do not have paperwork that this account was in good standing. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## RENT-A-CENTER DBA AMICA LEASING

22. Rent-A-Center DBA Amica Leasing claims to have a "debt" that the Plaintiff needs to pay within alleged account ██4552X, however, no money is owed. They also supply inaccuracies on his credit report that are false such as supplying late payments as well as stopped reporting all together. This behavior is immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

## SANTANDER CONSUMER USA; CAPITAL AUTO FINANCE INC.; CAPTIAL ONE; MATTHEW MOTORS CLAYTON; LEITH CHRYSLER PLYMOUTH JEEP/EAGLE, INC;

23. These Defendants illegally accessed the Plaintiff's credit report, by way of a hard pull, on or about March 2020 without the Plaintiff's consent nor knowledge. The Plaintiff and these Defendant did not do any business together during or after March 2020 either which makes this activity and behavior immoral, unethical, or unscrupulous, and it substantially injures the Plaintiff;

24. Based on the aforementioned statements, the Defendants are liable in accordance with the UDTPA. Therefore, the Plaintiff is requesting that the jury awards him compensatory, punitive, and statutory damages accordance to the remedy provisions of the up to at least $50,000 per Defendant along with treble damages per the statute.

# COUNT II: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

25. The Federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). The Act (Title VI of the Consumer Credit Protection Act) protects information collected by consumer reporting agencies such as credit bureaus, medical information companies and tenant screening services. Information in a consumer report cannot be provided to anyone who does not have a purpose specified in the Act. Companies that provide information to consumer reporting agencies also have specific legal obligations, including the duty to investigate disputed information. In addition, users of the information for credit, insurance, or employment purposes must notify the

consumer when an adverse action is taken on the basis of such reports. The Fair and Accurate Credit Transactions Act added many provisions to this Act primarily relating to record accuracy and identity theft. With that said, the Defendants have violated the FCRA by engaging in the following activities:

    a. Currently, the Defendants still falsely, intentionally, knowingly, and fraudulently, and illegally reports these accounts as being delinquent, past-due, and/or charged off account on the Plaintiff's credit report.

    b. The Defendants claims within the credit reporting that the debt was the Plaintiff's and that the debt was past due when the debt was either not his or the debt has been paid in full;

    c. These credit furnishers gave the credit reporting agencies inaccurate financial information about the Plaintiff;

    d. The Defendants failed to correct credit information that was incorrect and false within the credit reports when demanded to do so when the Plaintiff filed his disputes;

26. Based on the aforementioned statements of Count I, the Defendants are liable in accordance with the FCRA. Therefore, the Plaintiff is requesting that the jury awards him compensatory, punitive, and statutory damages accordance to the remedy provisions of the Fair Credit Reporting Act up to at least $50,000 per Defendant.

## COUNT III: VIOLATIONS OF THE FAIR CREDIT BILLING ACT

27. The FCBA aims to "protect the consumer against inaccurate and unfair credit billing and credit card practices,"15 U.S.C. §1601(a). As relevant here, the FCBA imposes on creditors "requirements...for the correction of billing errors." Am. Express Co. v. Koerner, 452 U.S. 233, 234 (1981). The "primary" such requirement, at issue in this case, is that if a creditor receives "written notice" from a consumer that "indicates [his] belief that [his]statement contains a billing error "within 60 days after the creditor transmitted that statement, the creditor must comply with "two separate obligations." Id.at234, 236 (citing 15U.S.C. §1666(a)). First, within 30 days of receiving that written notice, it must acknowledge receipt to the consumer in writing.15 U.S.C. §1666(a)(3)(A). Second, within two billing cycles and "in no event later than ninety days" after the consumer files his written dispute, it must either (1) "make appropriate corrections" to the consumer's account, "including the crediting of any finance charges on amounts erroneously billed," or (2)"conduct an investigation" into the dispute and "send a written explanation" to the consumer "setting forth to the extent applicable the reasons why the creditor believes the account...was correctly shown in the statement."Id.§1666(a)(3)(B)(i)–(ii). The creditor must take these steps "before making any attempt to collect the disputed amount." Am. Express, 452 U.S. at 237.

28. Within this case, each Defendant has delivered a written notice each Defendant demanding for an accounting based on the billing errors that she saw. Neither Defendant has complied with his request to make the appropriate corrections to his accounts or conduct an investigation into the dispute and send his written explanation as to their findings. Based on this, the Defendants have indeed violated the FCBA but that they have also additionally violated the FCBA in the following manners:
    a. Approved unauthorized charges regarding the Plaintiff's accounts;
    b. Implements charges that list the wrong dates or amounts;
    c. Charged for goods and services that the Plaintiff didn't accept;
    d. Egregious math errors regarding the illegal accounts;
    e. Approved charges for which the Plaintiff asked for an explanation or written proof of purchase, along with a claimed error or request for clarifications;
    f. Enacted charges not authorized by the Plaintiff
    g. Enacted charges in the wrong amount
    h. Enacted charges for goods or services not received by the Plaintiff
    i. Enacted calculation errors
    j. Mailed statements to the wrong address, even though the account is false and illegal

29. Because of these actions were invoked by the Defendants, the Plaintiff is looking for damages, plus twice the amount of any finance charge that was imposed throughout the lifespan of the alleged debt as well as punitive damages for the pattern and practice of violations that was established. In addition, the Plaintiff is requesting that the jury awards him compensatory, punitive, and statutory damages accordance to the remedy provisions of the Fair Credit Billing Act up to at least $50,000 per Defendant.

## COUNT IV: VIOLATIONS OF THE TRUTH-IN-LENDING ACT 

This Act (Title I of the Consumer Credit Protection Act) authorizes the Commission to enforce compliance by most non-depository entities with a variety of statutory provisions. Among other requirements, the Act requires creditors who deal with consumers to make certain written disclosures concerning finance charges and related aspects of credit transactions (including disclosing an annual percentage rate) and comply with other mandates, and requires advertisements to include certain disclosures. The Act has been amended on numerous occasions, adding requirements for credit cards and open-end credit; for mortgage credit such as ability to repay standards, loan origination, anti-steering, appraisal independence, and mortgage servicing; and others. A number of laws amending and enforced under this Act are listed separately. Truth in Lending Act violations that the Defendants have enacted in include the following practices on the part of lenders:

a. The Defendants have engaged in unfair credit billing by way of not stating the correct amount of what is owed
b. Exhibiting unfair credit card practices by of charging additional late charges and late fees that are not allowed via agreement or contract;
c. Misrepresentations of the accounts by way of the aforementioned;

d. Failing to disclose necessary information about the credit account or loan by way of the aforementioned;

e. According to TILA, these Defendants are not allowed to increase interest rates or make significant changes to the fee structure of a loan without giving cardholders notice at least 45 days before the change takes effect but they did not abide by this provision.

f. The Defendants must allow cardholders to opt out of significant changes to the terms of their credit account and pay off balances under the original terms, however, the Plaintiff was not given that opportunity.

g. The Defendants did not provide their statements for their accounts at least 21 days before payments are due;

h. The Defendants did not supply monthly statements of balances that disclosed how long it would take the Plaintiff to pay off their balance if they only made minimum payments monthly.

i. And lastly, the Defendants did not disclose how much the Plaintiff would have to pay every month in order to pay the entire balance in three years within the statements.

30. Because of these actions were invoked by the Defendants, the Plaintiff is looking for damages, plus twice the amount of any finance charge that was imposed throughout the lifespan of the alleged debt as well as punitive damages for the pattern and practice of violations that was established. In addition, the Plaintiff is requesting that the jury awards him compensatory, punitive, and statutory damages accordance to the remedy provisions of the Truth In Lending Act up to at least $50,000 per Defendant.

## COUNT V: VIOLATIONS OF THE FEDERAL DEBT COLLECTION PRACTICE ACT (HUNTER WARFIELD ONLY)

31. The Fair Debt Collection Practices Act (FDCPA) (15 USC 1692 et seq.), which became effective in March 1978, was designed to eliminate abusive, deceptive, and unfair debt collection practices. It also protects reputable debt collectors from unfair competition and encourages consistent state action to protect consumers from abuses in debt collection. The FDCPA defines a debt collector as any person who regularly collects, or attempts to collect, consumer debts for another person or institution or uses some name other than its own when collecting its own consumer debts. The definition includes, for example, an institution that regularly collects debts for an unrelated institution, such as an institution that, under a reciprocal service arrangement, solicits the help of another in collecting a defaulted debt from a customer who has moved.

32. Hunter Warfield is the industry's leading revenue recovery agency. Hunter Warfield is a member of the International Association of Commercial Collectors, Inc. (IACC), the world's largest and most respected association of commercial debt collection professionals. IACC members must possess the qualifications, training and experience that ensure a high level of service to commercial clients. Members adhere to the association's strict standards, guaranteeing commercial accounts are handled ethically and professionally. Since 1970, IACC's extensive commercial collectors, attorneys and

other professionals have earned a reputation for commitment to fair and honest business practices, professional development and continuing education.

Within this case, Hunter Warfield violated the FDCPA by:

a. Engaging in false, deceptive, or misleading representation or means in connection with the collection of the alleged debt when they knew that the debt was not the Plaintiff's,
b. Engaged in unfair or unconscionable activity to collect or attempt to collect any debt by issuing threats, use or threaten to use violence or other criminal means to harm the physical person, reputation, or property of the Plaintiff;
c. Annoy, abuse, or harass the Plaintiff by calling him repeatedly by having their telephone number or allowing their telephones to ring continuously;
d. Making telephone calls without properly identifying oneself. **15 U.S.C.A 1692d-f**
e. By not validating the debt by supplying the Plaintiff a copy of a judgment or original contract/agreement in regards to the debt from the original creditor within a 30 day period when the Plaintiff requested such documentation;
f. By annoying, abusing, and harassing the Plaintiff by calling the Plaintiff repeatedly and ring continually;
g. By making telephone calls to the Plaintiff without properly identifying oneself;
h. By falsely representing the character, amount, or legal status of the debt, or of any services rendered, or compensation he or she may receive for collecting the debt;
i. Threatening to take any action which is not legal or intended;
j. Falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment or sale of any property or wages of any person, unless such action is lawful and intended by the debt collector or creditor;
k. Falsely represent or imply that the sale, referral, or other transfer of the debt will cause the consumer to lose a claim or a defense to payment, or become subject to any practice prohibited by the FDCPA;
l. Falsely represent or imply that the consumer committed a crime or other conduct to disgrace the consumer;
m. Communicate, or threaten to communicate, false credit information or information which should be known to be false, including not identifying disputed debts as such;
n. Use any false representation or deceptive means to collect or attempt to collect a debt or to obtain information about a consumer;
o. Fail to disclose in the initial written communication with the consumer, and the initial oral communication if it precedes the initial written communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. In addition, the debt collector must disclose in subsequent communications that the communication is from a debt collector which Hunter Warfield did not comply with;
p. Collect any interest, fee, charge or expense incidental to the principal obligation unless it was authorized by the original debt agreement or is otherwise permitted by law;

Based on these actions, the Plaintiff for the jury to award any and all actual damages, punitive damages up to $1,000 & costs associated in this action.

## COUNT VI: VIOLATIONS OF THE
## SECURITY DEPOSIT ACT (STALLINGS MILLS ONLY) 

The North Carolina Tenant Security Deposit Act (the "Act") sets out the rights and responsibilities of residential tenants, landlords, and their agents regarding tenant security deposits. (See NC General Statutes Sections 42-50 through 42-56.) The security deposit that is paid by a tenant when they move into a rental dwelling actually belongs to the tenant and is held in trust until their tenancy is terminated. At the time of termination, there are only 7 permitted uses for the security deposit by the Landlord according to the Tenant Security Deposit Act, North Carolina General Statutes (NC GS 42-51). The permitted uses according to this act are as follows:

(1) Nonpayment of rent that is due;
(2) Damage to the premises (other than damage due to "ordinary wear and tear");
(3) Non-fulfillment of the rental period (future rent due under the lease agreement when the Landlord is unable to re-rent the unit for a similar amount after diligent efforts to do so);
(4) Unpaid bills from the tenant's occupancy which become a lien against the property;
(5) The cost of re-renting the premises after a breach of the lease by the tenant;
(6) Costs of removal and storage of tenant's personal property;
(7) Court costs and legal fees in connection with terminating a tenancy;

Based on these actions, the Plaintiff for the jury to award a full refund of the security deposit as well as any and all actual damages, punitive damages & costs associated in this action

## COUNT VII: CIVIL CONSPIRACY

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." **15A C.J.S. Conspiracy 1(1), at 596 (1967)**. While Defendants are correct that there is no cause of action for civil conspiracy per se, an "action may lie for wrongful acts committed pursuant to a conspiracy." Henderson v. LeBauer, 101 N.C. App. 255, 260, 399 S.E.2d 142, 145 (1991). In order to state a claim for civil conspiracy under North Carolina law, Plaintiff must allege that there was: "(1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the plaintiff as a result." Eli Research, Inc. v. United Comm. Group, LLC, 312 F. Supp.2d 748, 763 (M.D.N.C. Apr. 6, 2004) (citing Pleasant Valley Promenade, L.P., v. Lechmere, Inc., 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995)). "[L]liability attaches as a result of the wrongful act committed, not the agreement itself." Eli Research, Inc., 312 F. Supp.2d at 763 (citing Dickens v. Puryear, 302 N.C. 437, 456, 276 S. E. 2d 325, 337 (1981)). Thus, "the existence of an underlying tortious act is the key to establishing a civil conspiracy." Id.

For a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit. Conspiracy, then, serves as a device through which vicarious liability for the underlying tort may be imposed on all who commonly plan, take part in, further by cooperation,

lend aid to, or encourage the wrongdoers' acts. **In re North Dakota Personal Injury Asbestos Litig., 737 F. Supp. 1087 (D.N.D.1990); Riddell v. Riddell Washington Corp., 866 F.2d 1480 (D.C.Cir.1989); see also Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988)** (function of civil conspiracy doctrine is to "yoke particular individuals to civil torts charged in the complaint"); **Mohammed v. Union Carbide Co., 606 F. Supp. 252 (E.D.Mich.1985)** (allegation of conspiracy must be coupled with substantive theory of liability in order to sustain claim); **Valdan Sportswear v. Montgomery Ward & Co., 591 F. Supp. 1188 (S.D.N. Y.1984)** (under North Carolina law, civil conspiracy claim is proper only to establish joint liability by co-participants in tortious conduct). **But see Burnett v. Nicolet, Inc., 818 F.2d 1098 (4th Cir.1986); Belkow v. Celotex Corp., 722 F. Supp. 1547 (N.D.Ill. 1989)**. A conspirator may avoid liability for the conspiracy by withdrawing from, or abandoning the conspiracy. **Cf. 16 Am. Jur.2d Conspiracy § 26 (1983)** (where an overt act is required for a criminal conviction, a conspirator may avoid guilt by withdrawing from the conspiracy prior to the commission of the overt act).

Based on the previous case law, the Defendants committed civil conspiracy by committing the following: (1) Collaborating with each other to sabotage the Plaintiff's creditworthiness by committing acts that violate aforementioned Counts 1 through VII.

## NOTICE OF THE PRESERVATION OF

## ELETRONICALLY STORED INFORMATION "ESI"

NOW COMES Defendant and moves, for the Court as well as the Plaintiff to be notified of the importance of the preserving of evidence in this. From the time that the Defendant notified the Plaintiff of his identity being stolen within the month of July 2019, the Plaintiff had and still has an obligation to preserve any material evidence that would be relevant to expected, future lawsuits, which is where we are now.

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).*

One's responsibility to "preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Id. at 591 (citation omitted). "Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a litigation hold to ensure the preservation of relevant documents." *Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 511 (D. Md. 2009) (internal quotation marks and citation omitted).*

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (internal quotation marks, alterations, and citations omitted);

Mainstreet Collection, Inc. v. Kirkland's, Inc., 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting Oppenheimer Fund., Inc. v. Sanders, 437 U.S. 340, 351 (1978) (further citations omitted)).

## PLAINTIFF REQUEST FOR PRELIMINARY INJUNCTION

Rule 65 of the North Carolina Rules of Civil Procedure governs the procedure for the issuance of preliminary injunctions and temporary restraining orders. Preliminary injunctive relief is authorized by G.S. 1-485. A preliminary injunction is an order of the court preventing a party from doing specified acts during the underlying litigation. It is an "extraordinary measure" to preserve the status quo until a trial can be had on the merits. **A.E.P. Industries, Inc. v. McClure, 308 N.C. 393, 401, 302 S.E.2d, 754, 759 (1983); Kaplan v. Prolife Action League of Greensboro, 111 N.C. App. 1, 16, 431 S.E.2d 828, 835 (1993).**

Because a preliminary injunction is 'an extraordinary measure,' it will issue only upon the movant showing that (1) There is a 'likelihood of success on the merits of his case; and TROs and Preliminary Injunctions (2) The movant will likely suffer "irreparable loss unless the injunction is issued." **Visionair, Inc. v. James, 167 N.C. App. 504, 508, 606 S.E.2d 359, 362 (2004)**; or, issuance is "necessary for the protection of a plaintiff's rights during the course of the litigation." **Setzer v. Annas, 286 N.C. 534, 537, 212 S.E.2d 154, 156 (1975); North Carolina Baptist Hosp. v. Novant Health, Inc.,195 N.C. App. 721, 673 S.E.2d 794 (2009); Robins & Weill v. Mason, 70 N.C. App. 537, 541, 320 S.E.2d 693, 696 (1984)**.

Based on the aforementioned allegations of the Plaintiff, he is requesting that the Jury of the Court awards the Plaintiff damages for violating torts I-IV along with punitive damages.

## JURY DEMAND

The Plaintiff demands a trial by jury of all issues so triable pursuant to North Carolina Code Chapter 1A - Rules of Civil Procedure-Rule 38-Jury trial of right.

Wherefore, Plaintiff respectfully requests that the Court grants the following relief:

A. Grants a jury award for the Plaintiff's Complaint of $50,000 or more;

B. Award the Plaintiff their fees and costs incurred in connection with this action;

C. Grant any additional relief as the Court may deem just and proper.

Dated: November 18, 2021

Respectfully Submitted,

Curtis Leach
14 Ross Farm Lane
Clayton, NC 27527
Phone: ████████8588
████████@live.com

**CERTIFICATE OF SERVICE**

## CERTIFICATE OF SERVICE

We hereby certify that on this day, a true copy of the foregoing and attachments, if any, were forwarded on the opposing parties within this case through their registered agents, via certified mail with return receipt.


Dated: November 18, 2021

Respectfully Submitted,

Curtis Leach
14 Ross Farm Lane
Clayton, NC 27527
Phone: ███████8588
████████@live.com